# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| RONNIE CLOUD, JR. ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | |
| ] | CV-11-BE-2566-M |
| TOWN OF IDER, et. al., ] | |
| ] | |
| Defendants. ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This Section 1983 matter, alleging a violation of Plaintiff's constitutional rights to freedom of association and freedom of speech, is before the court on "Motion to Dismiss of Defendants Town of Ider, William Crabtree, Mickey Smith, James Smith and Billy Williams" (doc. 6); and on Defendants' "Motion to Strike Plaintiff's Evidentiary Submission 'B' as Attached to Plaintiff's Response to Defendants' Motion to Dismiss" (doc. 18). The individual Defendants assert their entitlement to absolute legislative immunity and qualified immunity. For the reasons stated in this Memorandum Opinion, the court finds that the motion to dismiss is due to be GRANTED and the motion to strike is due to be GRANTED.

## I. MOTION TO STRIKE

Defendants' motion requests this court to strike Plaintiff's evidentiary submission 'B' attached to Plaintiff's response to the motion to dismiss. Plaintiff describes that evidentiary submission as "Times Journal article written by Mike Harrison outlining statement made by

1

various council members and mayor concerning the Plaintiff's termination, produced by Defendants in initial disclosures." (Doc. 16-2). As Defendants note, the "evidentiary" submission listed as Exhibit A was attached to the original complaint, and Defendants do not object to the court considering it as part of the complaint, and thus, considering it pursuant to a Rule 12(b) motion to dismiss as opposed to a Rule 56 motion. *See* Fed R. Civ. P. 10(c); *see also Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and exhibits attached thereto.").

The court agrees with Defendants that Exhibit 'B' to the Plaintiff's "evidentiary" submission is an inappropriate submission in opposition to Defendant's motion to dismiss and is due to be stricken. The court will not consider that document in ruling on the motion to dismiss. Even if it were relevant and material evidence, and the court does not find that it is, a motion to dismiss tests the sufficiency of the complaint under Rule 12(b), not of the evidence. Individual Defendants have raised immunity defenses and those defenses, if they indeed apply, shield them not only from liability but also from suit. *See Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004). Thus, the court has a particular obligation to resolve the immunity issues at the earliest possible point, usually the motion to dismiss stage, *before* individual Defendants have to assume the burdens of discovery. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."). If the court considered extraneous evidence outside the pleadings, and thus, converted this motion to one for summary judgment, requiring individual Defendants to respond with evidentiary matter, that course would subvert the immunity protections. This court should

not and will not take that course; it will GRANT the motion to strike.

## II.  MOTION TO DISMISS

### A.  FACTS

On July 13, 2011, the Plaintiff, Ronnie Cloud, Jr., a sanitation worker employed by the Town of Ider, brought suit against that town and some members of Ider's City Council – William Crabtree, Mickey Smith, James Smith, and Billy Williams.  He sued the named city council members both in their individual and official capacities.  Although Cloud's Complaint does not contain separate counts, he asserts a claim brought pursuant to Section 1983 that Defendants violated his First and Fourteenth Amendment rights to freedom of association and freedom of speech.

According to the Complaint, the Town of Ider hired Cloud on November 3, 2008, and assigned him to the sanitation department.  On or about Wednesday, July 1, 2009, Cloud contacted the town's Mayor, Brad Hannah, orally requesting time off for the remainder of that day through the end of the week, and Mayor Hannah authorized the time off. Cloud further made a written request for leave without pay for the following week, July 6-10, 2009, as well as for Monday, July 13, 2009, "due to personal & medical related issues." (Doc. 1, at 5).  Mayor Hannah approved that request on July 3, 2009, signing the written request.

Also on July 1, 2009, Defendant Crabtree met informally with some of the other Defendants and during that informal meeting "proclaimed" himself mayor *pro tem*.  Crabtree was aware of Cloud's association and friendship with Mayor Hannah.  Crabtree hired a temporary worker to perform Cloud's job functions in spite of Mayor Hannah's authorization of Cloud's leave time.

On July 13, 2009, at the regularly scheduled meeting of the Mayor and City Council, Crabtree made a motion to dismiss Cloud and replace him with the "currently hired employees," including the temporary employee that Crabtree had hired. Despite Mayor Hannah's statement that he had approved Plaintiff's request for leave time, the Council terminated Cloud's employment at that meeting, with all individual Defendants voting for termination.

On December 18, 2009, the Plaintiff filed a claim for damages with the Town of Ider and claims that the city neither responded to him about his claim nor investigated it.

### B. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*  (quoting *Twombly*, 550 U.S. at 557).

      The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard.  The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however,  the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 129 S. C. at 1949-50.  The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150.  Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

*Qualified Immunity*

In the instant case, the individual Defendants have raised the defense of qualified immunity from suit.  "Qualified immunity offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Contrary to the Defendants' contention, the Eleventh Circuit no longer has a heightened pleading standard for Section 1983 claims against individuals entitled to qualified immunity.  *Randall*, 610 F.3d at 710.

### C. DISCUSSION

**1. Official Capacity Claims of Individual Defendants**

The Plaintiff acknowledges that the claims against the individual Defendants in their official capacities are due to be dismissed.  (Pl.'s Resp. Doc. 16, at 1); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (finding as redundant official capacity suits against municipal officials where the municipality is also a defendant).  Therefore, the court finds that the motion to dismiss is due to be GRANTED as to the official capacity claims against Defendants Crabtree, Williams, Mickey Smith, and James Smith, and those claims are DISMISSED WITH PREJUDICE.

**2. Legislative Immunity**

Individual Defendants argue that they are entitled to absolute legislative immunity because their actions made the basis of this suit involved legislative actions performed as City Council members.  In so arguing, those Defendants ignore the Eleventh Circuit's decisions

addressing legislative immunity, which do not *automatically* bestow legislative immunity upon all actions of local legislators. Rather, those decisions look to the function of the legislators' actions, attaching immunity only to "legislators engaging in actions considered 'an integral part of the deliberative and communicative processes by which [legislators] participate in ... proceedings with respect to the consideration and passage or rejection of proposed legislation.'" *See Bryant v. Jones*, 575 F.3d 1281, 1304-5 (11th Cir. 2009) (quoting *Gravel v. United States,* 408 U.S. 606, 625 (1972)); *see also, e.g., Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (quoting the same passage and acknowledging that legislative immunity "typically" does not cover employment decisions). The purpose of the immunity is "to protect the integrity of the legislative process by insuring the independence of the individual legislators," not to confer a personal or private benefit on the legislators. *United States v. Brewster*, 408 U.S. 501, 507 (1972). Thus, when legislators raise the defense of legislative immunity for their actions on the job, the court must analyze whether the action in question is properly characterized as a legitimate legislative activity, to which absolute immunity attaches, or an administrative action, to which it does not. The Eleventh Circuit has explained that "[e]mployment decisions generally are administrative except when they are accomplished through traditional legislative functions such as policymaking and budgetary restructuring that strike at the heart of the legislative process." *Bryant*, 575 F.3d at 1306.

In the instant case, the actions of the City Council as described in the Complaint were employment decisions that terminated the Plaintiff's own employment but not his position. Nothing in the Complaint suggests that the termination was connected with policymaking decisions or budgetary restructuring or that it otherwise fell outside the general rule

characterizing employment decisions as administrative. Therefore, the court finds that the individual Defendants' action of terminating Cloud was an administrative action to which absolute legislative immunity does not attach and does not provide a ground for dismissal.

### 3. Constitutional Claims

Although the court recognizes that the individual Defendants have asserted defenses of qualified immunity in addition to those of legislative immunity, the court will first address whether the Complaint states a claim upon which relief can be granted as to the violation of his constitutional rights, an analysis applying to *all* Defendants.

#### a. Freedom of Association

Plaintiff has asserted that all Defendants violated two of his constitutional rights: his right to free speech and his right to "freedom of association." The court will discuss the former in further detail below. However, before the court spills much ink separately analyzing the latter, it first notes that the Supreme Court of the United States has only recognized a constitutionally protected "freedom of association" in two contexts: (1) the freedom of *intimate* association, involving the freedom to choose "to enter into and maintain certain intimate human relationships;" and (2) the freedom of *expressive* association, which "recognize[s] a right to associate for the purposes of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion." *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (setting out the two areas in which the Court has recognized freedom of association and using quoted language). Because nothing in the Complaint or the briefs suggests that the first context applies, and because both parties confine the discussion of constitutional violations to free speech, the court will analyze the alleged

8

constitutional violation as one of free speech.

### b. Freedom of Speech

The court has read and re-read the Complaint in an attempt to find speech alleged in the pleading that plausibly could be characterized as constitutionally protected. In paragraphs five and seven of the Complaint, Cloud alleges that he contacted Mayor Hannah in July of 2009 and asked for time off work, which Hannah granted, and that the City Council voted to dismiss Cloud a few weeks later. Even if, assuming *arguendo*, Cloud's dismissal were in retaliation for his speech requesting leave time, those allegations are not necessarily enough, because all speech is not protected. Rather, Cloud's Complaint must allege facts that, if true, would establish that Defendants retaliated against Cloud as a result of protected *public* speech.

The Eleventh Circuit has explained its process of evaluating First Amendment retaliation claims as follows:

> This circuit has developed a four-part test to determine whether an employee suffered such retaliation. First, a court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern. If so, the district court must weigh the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Should the employee prevail on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee. Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

*Watkins v. Bowden*, 105 F.3d 1344, 1352-53 (11th Cir. 1997). Step one of this initial balancing test requires the court to focus on whether the speech at issue is one of public concern, which is generally protected speech, or of personal concern, which is generally not protected. *See Badia*

9

*v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998). The court must analyze the "content, form, and context" of a plaintiff's speech to determine its nature. *Connick v. Myers*, 461 U.S. 138, 147 (1983). "For an employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. "Absent extraordinary circumstances, however, First Amendment protection remains unavailable when 'a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . .'" *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (quoting *Connick*, 461 U.S. at 147).

When analyzing Cloud's speech requesting leave in the instant case, Cloud cannot proceed past step one of the balancing test; he has alleged no facts indicating that the speech was public speech on matters of political, social, or other concern to the community. Instead, the facts in his Complaint establish only employee speech focused on matters of personal interest: taking leave from his job.

In paragraph seven, Cloud alleges that, at the City Council meeting where the Council addressed a motion to fire Cloud, the Mayor spoke and told the Council that he had approved Cloud's leave. Of course, this alleged speech was performed by the Mayor, not Cloud himself, and nothing in the Complaint indicates that Cloud was present at the meeting or that he and the Mayor otherwise joined together to speak about this matter. In any event, even the Mayor's speech, as described in the Complaint and attachments, is speech about internal employment matters, not protected public speech on matters of community concern. Even though the Mayor's speech occurred at a more public setting – a called City Council meeting – the speech was limited to discussions about an employee's job and whether he should be dismissed, with further

details about whether the employee had quit or had been granted leave time. Thus, the court finds that the Mayor's speech about Cloud's employment was not public speech protected by the First Amendment.

Cloud's only other speech alleged in the Complaint is his filing of a damage claim with the City, which occurred four months after he was discharged. Because that speech occurred after the alleged retaliation – his firing – it cannot form the basis of a plausible claim for First Amendment retaliation.

Therefore, the court finds that as Cloud has not alleged any constitutionally protected speech in his Complaint, his First Amendment retaliation claim must fail as a matter of law, and Defendants' motion to dismiss is due to be GRANTED, and all remaining claims in this action are due to be DISMISSED WITHOUT PREJUDICE.

In light of that ruling, the court need not address the immunity defenses that the individual Defendants raise. However, as an alternative ruling, the court finds that the individual Defendants are entitled to qualified immunity because the allegations set forth in the Complaint and its attachments, if true, state no violation of *clearly established* constitutional rights. *See Morgan*, 6 F.3d at 754 (First Amendment protection remains unavailable when a public employee speaks not as a citizen but as an employee). More specifically, because the speech at issue involved a public employee and his boss speaking about the employee's own job, the speech indisputably contained some elements of private, employee speech. The existence of some substantial element of employee speech means that "the court must necessarily balance [an employee's speech interest against the employer's interest in efficiently providing public services] on a case-by-case basis. Because of this case-by-case approach, '[t]here will rarely be a

basis for [an] *a priori* judgment that the termination or discipline of a public employee violated clearly established constitutional rights.'" *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989) (quoting *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988)).  Thus, only in a "rare" or "extraordinary" case would the First Amendment balancing test "lead to the inevitable conclusion that the discharge of the employee was unlawful" and, therefore, clearly established. *Dartland,* 866 F.2d at 1323.  The instant case is not such a rare, extraordinary one.

Thus, as stated previously, the court finds as an alternative ruling that First Amendment protection for the speech in the instant case was not *clearly established at the time* of that speech and alleged retaliation.  Because qualified immunity completely protects individual public employees performing discretionary functions as long as they do not violate clearly established federal law, that immunity would indeed cover the individual Defendants in the instant case.  *See Randall*, 610 F.3d at 714.  The court acknowledges the Plaintiff's allegation that the Defendants had an improper motive for terminating him; however, even if the Plaintiff could indeed present evidence to support that allegation, "the presence of a jury issue about a defendant's improper intent does not necessarily preclude qualified immunity." *Sherrod v. Johnson,* \_\_\_\_ F.3d \_\_\_\_, No. 10-11804, *10  (11th Cir. Jan. 23, 2012) (citing with approval *Foy v. Holston*, 94 F.3d 1528, 1533 (11th Cir. 1996)).  Therefore, as an alternative ruling, the court finds that the motion to dismiss as to the claims against individual Defendants is due to be GRANTED, and all remaining claims against them are due to be DISMISSED WITHOUT PREJUDICE because they are entitled to qualified immunity as to the claims asserted in the Complaint.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 24th day of January, 2012.

                                              _____
                                              KARON OWEN BOWDRE
                                              UNITED STATES DISTRICT JUDGE